# 556

## PATTEN & DAVIES LUMBER CO. v. COMMISSIONER OF INTERNAL REVENUE.
### No. 6156.

Circuit Court of Appeals, Ninth Circuit.
Dec. 6, 1930.

Thomas R. Dempsey and A. Calder Mackay, both of Los Angeles, Cal., for petitioner.

G. A. Youngquist, Asst. Atty. Gen., and Morton Poe Fisher, John H. McEvers, and J. P. Jackson, Sp. Assts. to Atty. Gen. (C. M. Charest, Gen. Counsel Bureau of Internal Revenue and Dean P. Kimball, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for respondent.

Before RUDKIN and WILBUR, Circuit Judges, and KERRIGAN, District Judge.

WILBUR, Circuit Judge.

The petitioner sought a deduction from its income for the year 1921, for purposes of taxation, of the amount of a bad debt owing to it by the Sunset Pier Company. The Commissioner decided against the petitioner, and his decision was affirmed upon appeal to the Board of Tax Appeals. The petitioner seeks a review of the decision of the Board of Tax Appeals. The sole question presented is as to whether or not the debt in question was ascertained to be worthless at the time it was written off the books of the petitioner, in De-

cember, 1921. There is no dispute in the evidence as to the facts. It appears from the evidence that in the year 1921 the petitioner furnished lumber valued at $15,000 to the Sunset Pier Company, to be used in the construction of a wharf or pier at Venice, Cal., and as security therefor received a deed of trust on a leasehold interest upon this wharf or pier. Later during the year a building constructed upon the pier (referred to in the evidence as a "pleasure pier") was burned, the pier was partly destroyed and the activities from which the debtor anticipated its revenue were so far circumscribed that on December 9, 1921, a petition in involuntary bankruptcy was filed against the Sunset Pier Company, and on December 12, 1921, the Board of Trustees of the City of Venice, by formal resolution, declared the lease of the Sunset Pier Company forfeited on account of failure to pay the rentals stipulated in the lease and for other alleged violations of the lease. In this situation the petitioning taxpayer caused an investigation to be made by its attorney of the affairs of the Sunset Pier Company and of its financial responsibility and as to the probability of petitioner collecting this debt. That investigation included not only the affairs of the Sunset Pier Company, but also the financial responsibility of stockholders whose names were furnished to the attorney by the officers of the petitioning taxpayer. After such investigation the attorney advised the petitioner that the debt was worthless or uncollectible. Acting upon that report and advice, petitioner wrote off the entire indebtedness and claimed a deduction on its taxable income for the year 1921 of the entire indebtedness so charged off. According to the testimony of the president of the petitioning taxpayer, he also had investigated the responsibility of the stockholders of the Sunset Pier Company, who, so far as he knew, were the only stockholders of the company, and, being unable to find that they owned anything, came to the conclusion that these men were financially irresponsible. The treasurer of the petitioner testified that he had made some investigation regarding the responsibility of the stockholders and that, according to the best information obtainable, they were financially irresponsible. He testified, however, that he did not know whether he had investigated all of the stockholders and did not investigate the stock records to see who the stockholders were. There is a stockholder's liability in California. The trustee in bankruptcy of the Sunset Pier Company testified that, in his opinion, the indebtedness in question was not worth five cents

at the time the bankruptcy proceeding was inaugurated, in December 1921. He testified that in his opinion the stockholders were not financially responsible, and stated that one of the stockholders was involved in a divorce action with his wife, who had gotten all of his property; that another stockholder had absconded with the aforementioned wife and was out of the jurisdiction, and another stockholder was in Cleveland and not in good financial circumstances, and it was understood he had gone through bankruptcy, and another had consulted the witness about filing a petition in bankruptcy. With reference to the pier the trustee testified that "any reasonable, fair-minded person, at the end of 1921, could not say that that leasehold or alleged leasehold or the pier in the rotten condition was worth five cents. I tried to sell it for months and months and I had no success."

This was the situation at the time the indebtedness was charged off the books of the petitioner as worthless. Thereafter the trustee in bankruptcy succeeded in prevailing upon the board of trustees of the city of Venice to issue a new lease, in his name, and sold that leasehold interest, in 1922, for $30,000. As a result of that sale and the establishment by petitioner of its claim as a preferred claim, petitioner collected $13,153.80 on September 15, 1922, which it returned as a part of its income for the year 1922. At the hearing of the case a member of the Board of Tax Appeals stated as follows:

"I will give judgment for the respondent. I find as a fact that the debt was not ascertained to be worthless at the end of the year 1921, and that ultimate finding makes it unnecessary to make any other finding. There is not any question about the bona fides of the situation. There is not any question of the judgment of the attorney in advising them to charge it off or advising them it was worthless. The whole question is as to what the revenue act contemplates as the standard by which this deduction should be measured, and the obstacle it seems to me to be inexorable in the way of this taxpayer's taking that deduction at the end of the year 1921 is the fact that the debtor was then in bankruptcy. It seems to me you can't have a shifting standard by which it is left to the judgment of the taxpayer and anyone upon whom he may go for advice as to whether, when the debtor is in bankruptcy, anything will be recovered until there is some official marshalling or val-

uation of the assets to indicate clearly that nothing can be recovered. At the end of the year 1921 the situation was clearly in a state of complete legal uncertainty, practical uncertainty as well.

"There were at least three creditors of this corporation who thought there were sufficient assets to justify throwing the debtor into bankruptcy, rather than abandoning their claim. If the debtor had not been thrown into bankruptcy, it seems to me it might very well be that you could have examined the physical condition of the pier and examined into these other facts and have reached the conclusion that you were reasonably ascertaining this debt to be worthless, in charging it off and its deduction, but the fact stands in the way that there were enough people who thought otherwise to put them in bankruptcy, surrounding the situation with doubt, and the evidence shows that subsequently that doubt was entirely justified. There was a time, and I suppose it was in 1921 and 1922, when this return was prepared, the situation under the tax law was sufficiently doubtful to justify anybody in taking the deduction. Since that time the law has been cleared. The condition of the bankrupt, pendency of bankruptcy proceedings has been held to overcome the prima facie statement of worthlessness, and the law has been further cleared so as to hold that the mere opinion of a witness or of a taxpayer that the debt is worthless is not sufficient evidence. It must be sustained by facts to justify that opinion. It seems to me with the record in the condition it is, and the law being as well established as it is, there is no point in carrying it any further, and I will give judgment for the respondent."

And in the opinion of the Board of Tax Appeals which was rendered by said member, it was said:

"The only issue in litigation was as to whether respondent correctly held that a debt due the petitioner from the Sunset Pier Company was not ascertained to be worthless before the end of 1921. The existence of the debt and the fact of its charge-off were not in dispute. After hearing all of the evidence, from which it was indisputably clear that a petition in bankruptcy had been filed in December, 1921, against the debtor and that such bankruptcy proceeding was pending at the end of the year and that the outcome in respect of petitioner's claim was uncertain, the Division found as a fact that the debt was not ascertained to be worthless within the taxable year, and held that under

the statute no proper deduction in respect thereof could be made. It was therefore announced that the determination of the respondent was sustained, and in accordance therewith.

"Judgment will be entered under Rule 50."

It not only seems clear from the evidence that the taxpayer was fully justified, acting as a reasonable man would act, in charging off the indebtedness in question as worthless, but also that the Board of Tax Appeals was of that opinion. The Board, however, seems to be of opinion that the mere pendency of bankruptcy proceedings prevented the petitioner, under the circumstances, from so acting. This conclusion, although it is not so stated, seems to be based upon article 151 of Regulations No. 62, with relation to the deduction from income of bad debts, which provides as follows:

"Article 151. * * * Before a taxpayer may charge off and deduct a debt in part, he must ascertain and be able to demonstrate, with a reasonable degree of certainty, the amount thereof which is uncollectible. * * *

"Where the surrounding circumstances indicate that a debt is worthless and uncollectible and that legal action to enforce payment would in all probability not result in the satisfaction of execution on a judgment, a showing of these facts will be sufficient evidence of the worthlessness of the debt for the purpose of deduction.

"Bankruptcy is generally an indication of the worthlessness of at least a part of an unsecured and unpreferred debt. Actual determination of worthlessness in bankruptcy cases is sometimes possible before and at other times only when a settlement in bankruptcy shall have been had. Where a taxpayer ascertained a debt to be worthless and charged it off in one year, the mere fact that bankruptcy proceedings instituted against the debtor are terminated in a later year, confirming the conclusion that the debt is worthless, will not authorize shifting the deduction to such later year. * * * *"

This rule does nothing more, and was intended to do nothing more, so far as bankruptcy proceedings are concerned, than to establish the rule that the filing of bankruptcy proceedings should not, of itself, be sufficient justification for writing off the entire indebtedness as worthless. This would seem to be manifestly correct. The filing of a petition in bankruptcy would, of course, be an element to be considered in connection with the determination of the value of the debt, but one of the purposes of the bankruptcy proceeding is to distribute ratably to creditors the assets of an insolvent debtor. It is a fair assumption in such cases that the amount to be received by the creditor will be less than the entire amount of the debt, but how much less is a question to be determined from the amount of the assets of the debtor, the number of creditors, and the expenses of administration, etc. In the case at bar there was nothing in the filing of a petition in involuntary bankruptcy to encourage the petitioner into an intelligent belief that he was more likely to collect his debt than he would have been in the absence of a petition. The undisputed evidence discloses that the taxpayer was fully justified in writing the indebtedness off his books in 1921.

Judgment reversed, with directions to allow the claimed deduction.